We call the first and only case. Will the lawyers who are going to argue this case please step forward. And tell us your names. I'm Steve Greenberg on behalf of the appellant. And my name is Brian Huggies on behalf of the people of the state of Illinois. Okay. As you both know, this microphone does not amplify, it only records, so please keep your voices down. Mr. Greenberg, did you want to save any part of your 20 minutes for rebuttal? Maybe five minutes. I know that I used the 20. Right. Neither of you need to feel compelled to use the 20. Where I feel special is the other case on the afternoon. Right. Whenever you're ready. Good afternoon. This is a bit of an unusual case, because I think this is an issue that may be a first-time issue. Whether a weapon needs to be recovered to convict somebody of a possessory weapon offense, like unlawful use of a weapon, which of course really should be titled unlawful possession of a weapon or aggravated UUW. Or in this case, an individual criminal, which really is just another possessory weapon offense. In this particular case, the evidence is, there's not a lot of dispute, I don't think, about the evidence. An officer claims she is, makes an observation of my client. He is walking, according to her, he's holding what she thinks is a gun. She's not positive it's a gun, thinks it's a gun. And he's holding it, from the way she describes it, so she can see the handle and she can see the barrel. Which means he's holding it over the midsection. Because of that, she can't tell if it is a gun, whether it's an automatic or a revolver. She can't tell what caliber it is. She doesn't give any description of the size, the model, any details about the gun at all, except that she saw what appeared to be a barrel and what appeared to be a handle. Based on that, and she sees the young man get into a van. Based on that, she then follows the van as it pulls away and calls for other officers, who eventually pull the van over. One of those officers testified at trial also. There is nothing in this record to suggest that she told the other officers that the car had to be pulled over because the occupants were armed and dangerous. Because when they pull the vehicle over, it's a van actually, when they pull the van over, they walk up to the driver's window and they engage in conversation with the driver. They don't pull their weapons, they don't yell for everyone to get out of the car, they don't do anything that's consistent with wondering if somebody in that car is armed and dangerous. I think the reasonable evidence from that is that because she didn't say there's an armed man in a car, I'm certain he's armed, I've seen a gun for sure, or anything like that on the radio broadcast. But wasn't her testimony that she observed him exit the building carrying a gun? Well, she kept using the word gun, yes, but she couldn't describe the gun, so she could have called it whatever she wanted, that doesn't make any sense. But you're saying that because she didn't know it was a gun, and then just trying to be clear of what her testimony was. Her testimony was that she thought it was a gun. That's what she said. She observed a male black exit the apartment building carrying a silver handgun was what she said. But then when she got asked for the details, she was asked, you know, what color was it? She said silver. She was asked, was it a semi-automatic or a bottle? I couldn't tell. What kind of make? I couldn't tell. What kind of model? I couldn't tell. What kind of type? I can't tell you. What's the size of it? I can't tell you. Is it operable? I can't tell you. So she couldn't fill her in with the details. So yes, she could say it was a gun, but just like yesterday, when there was a trial out in Maywood, they said they thought it was a gun. I mean, saying you think it's a gun is just your opinion. It doesn't establish the fact that it's a gun. So someone could look at a distance at a toy gun, someone could look at a distance at a water pistol, and think that it's a real gun. Now, here's the real question, though. I assume there are real questions. The question I asked before was a real question, but I should say the issue. Because you raised the trial court, what happened yesterday out in Maywood, the trial court, that was a standard before that trial judge. Now, as an appellate court, it's not the same standard here, because this is a trial judge who was also the trier of fact. Right. So the standard for this court is whether any reasonable trier of fact would have found the elements of the crime to be present. Right. Let's discuss that. So here's where we sort of get into the slippery slope situation. In all possessory offenses in Illinois that I've been able to identify, you need the item, the illegal contraband, has to be presented to this trier of fact, stipulated to. It's not a point of contention. In other words, if someone has tried for a drug case, that's the example we used in our brief. If someone has tried for a drug case, someone couldn't come to court and go, it looked like white powder, it looked like cocaine, I've seen cocaine before. In my opinion, that's cocaine. And being able to convict somebody, you require laboratory testing to establish that it's that item. In cases involving stolen property, they can't just say, there was a TV set taken from here, and I saw him walking down the street with the TV set, and therefore, it looked like the TV set that was taken, and convict him of that TV set. It just wouldn't work. Without introducing the TV set. Right, right, without introducing the property. So you've got a situation, and I think this is a case of probably first impression, where you've got a trial judge who is expanding the law from armed robbery and other cases where the evidence, the crime of armed robbery is a robbery with a firearm, in the instances that are cited here. In murders, you can have a firearm enhancement. But the gravamen of those crimes is the robbery or the murder. Here, the corpus delicti of the crime is the possession of the actual item. So if this ruling stands, and if this court ratifies this ruling, then you're going to have a situation where they're not going to need to recover the item in order to prove someone guilty of a possessory offense. And there's not going to be any reason to distinguish between guns, drugs, or other offenses. So someone would be able to come to court, an officer would be able to come to court and say, I saw Johnny running a block away, he was carrying a black object, I know guns, I'm trained in guns, I was in the military. Whatever he says, and he can make the most convincing argument in the world, that that was a gun, and that would be enough to convict. But this case is a little bit different. Because there was a gun recovered underneath the thing. It's not different, though, because the judge expressly said that he was not finding him guilty of the gun that was under the mat. He expressly said that. He was very clear in the statement there, and their brief tries to say, well, this is such a big deal. We've read everything. I don't argue, but make your point. But we're with you. I'm not sure I'm with you on that one. What the judge says is, in the absence of a recovered firearm, the witness's unequivocal testimony is sufficient. But he doesn't say, I'm not finding that that gun was the gun. And, of course, we can affirm on any basis in the record. I don't read, and tell me if I'm missing something, but I don't read the, I think, I read the judges only saying, even if I didn't have that, I could still convict. But I don't hear him saying, I am not finding that that gun that was recovered is the gun that was seen in the defendant's possession. And tell me if I'm wrong. Why am I wrong? Well, first of all, the testimony is only that it looks like the gun she had seen. Right. There's no testimony that it's the same gun. The officers surrounded the van. No one saw anyone drop a gun, pick a gun, or anything like that. So I think that the case law, there's a case we cite in our brief where they've got similar situations of a gun found under a van. I don't think there's any proof that that gun was ever in the van. At best, it's circumstantial evidence supporting the inference that the original item was the gun. Right. In fact, I think that if the officer had said that is the identical object I had seen, my position would be weaker. Her credibility might be weaker as well. Well, it may be and it may not be because then you've got the issue of how do you know who dropped it, how did it get there. I know there's something about a hatch door and so forth. The way I read the judge's ruling as a whole, I think it's clear and also his ruling when the post-trial motion was presented and these things were already in the post-trial motion, that he was not finding that gun. And I think that's why he went out of his way to cite a case where he was sort of patting himself on the back because it was his own case from a week before on a non-robbery case, that if he had thought that that gun was the same gun, he wouldn't have had to go down this other route. Okay, let me ask you why the kind of evidence that would be necessary on a possessory crime should be any different than for a firearm enhancement or for an armed robbery. Why would we need more evidence on a possessory offense than an other kind of armed offense? You know, that's a great question and one that I've sort of wrestled with. I actually think the other cases are wrongly decided, but that's not my view. Because you've got the corpus delicto that this offense is the gun. And it's just the thought that you could be convicted of possessing an item merely on someone saying that you once possessed that item. Just the danger of that is too great. There's a reason why. I will tell you that, and maybe this is going too far, but in federal court you can have cases where someone can say, I was in there, it was white powder and so forth. They don't always require chemical testing in federal court. We do in state court on drug cases. And there's a reason why. I'm not sure we do on televisions, though. And we do on drugs. On theft cases, certainly a retail theft, I don't think you can be convicted of a retail theft without the property. There's a statute that talks about you can have a picture of the property or the property, but you still need the property to support a theft charge because you have to show it as though. I think that any time that there's a possessory offense, that the law should require that they actually show that the item that was possessed was contraband. I think that's fundamentally different. You know, in a murder case, you've typically got gunshot wound, which makes it more likely that there was a functioning firearm. You've got people who are usually saying, I saw flashes coming from the muzzle and so forth. That's a far greater, that's much better evidence than what we have in this case. In the armed robbery cases that are cited, you've got people who are very explicit in being able to say, I looked down the barrel of that gun and I knew that was a gun. I felt the cold steel against my skin. He told me he was going to shoot me, which is an admission that it's a firearm. You've got all those things. You've got none of that here. You've got none of that. It seems like part of your argument is also relying on the definition of a firearm, because the definition says not something that looks like a gun. It says it's designed to eject a projectile. Right. And then it excludes BB guns or starter pistols or whatever. So it seems like your argument goes a little bit further than proving what I saw was in fact a firearm. The object has to be so designed so we don't know what that object in the hand may have looked like a pistol or a firearm, but we don't know whether what was in the hand was designed to eject a projectile. Correct. So you're saying you can't know that until you have the physical object to inspect or to satisfy the finder of fact that it's in fact an object designed to project or expel a projectile? Yes. And that's sort of where I started on it. The armed robbery cases touch on that and then don't really address why the cases, why they don't have to go that far in those cases. In the Jackson case, they mention the statute. They actually quote it. Well, maybe it's because the crime is not the position of the gun. The crime is actually the robbery. Right. That's what I'm trying to. I'm just simply adding to what you're saying. And that's the distinction that you've got. You've got a specifically defined item that needs to be, that's what needs to be proven. You possess a firearm that fires a certain PSI and a projectile and so forth, and that if that's the essence of the offense, if that's what you're really being prosecuted for, then that's the item that they should be required to prove you have the item of reasonable doubt. So it's not only was it equivocal in her testimony, but by not having the item, they couldn't prove it, which comes back to Justice Smith's argument. Even if you accept that the gun under the car was, in fact, or under the van was, in fact, possibly the same item, they still didn't put into this record any stipulation that the gun had been tested and fired and was functioning and so on and so forth as they would be required to do. So no evidence even that that gun met the requirements of the statute. Correct. Correct. But that requirement of the statute seems to sort of be treated by people as a throwaway, but it shouldn't because it's a requirement of the statute, and it's just like testing drugs. Any other questions? Thank you. We'll see you in a few minutes. Good afternoon. Assistant State Attorney Brian Hardings on behalf of the people of the State of Illinois. There's a lot here. I just want to say something first so that I don't forget it that's responsive to something that was just said. There was evidence that the gun under the car was, in fact, a gun and fireless projectile and that the officer who recovered the gun said that when he did, he had to clear the gun, which means that it was loaded. And you can infer from that that it was, in fact, a gun that fired projectiles because it was loaded and had bullets in it, which I think means that it's a real gun, not a BB gun, not a Sarger gun or some other gun for lack of a better word. So there was evidence. So it was a device designed to expel a projectile. Yes, yes. But that was not determined until the officer did that, right? No. That confirmed, I think, and I think we can draw a line. It was established. Yes, yes. But it can be confirmed what the other officer said, which was that she saw a gun. Well, if it's the same gun that she saw. Yeah, and I think that that's a... It's circumstantial, but I'm just saying that. Yes, yes. That element, according to your statement just now, was not put into the record until the officer testified that he inspected the weapon, cleared it, emptied it, saw that it was loaded, et cetera. I'm not really sure how else it could have been put in any earlier unless the defendant... No, no, I'm saying earlier or later. Yes, yes. It happened that way. Yes, that was the order in which the evidence was presented, yes. I'm not talking about the order. I'm just saying that absent that testimony at any time in the trial, there would have been no evidence that the item recovered from the street was a device designed to expel a projectile. Right? I think that there would be no evidence that affirmatively showed that, but I think that that's an assumption that courts have been willing to make and that, indeed, the Illinois Supreme Court has said can be made when there is testimony that an item, that someone sees a firearm under the Illinois Supreme Court's decisions and then many, many decisions by the appellate courts in the wake of the Illinois Supreme Court's decisions. And, yes, those are armed robbery decisions, but in those cases they had to find, and it was an element of the crime that, in fact, there was a firearm involved and that it was and that it met those requisites. See, with armed robbery, it doesn't really have to be a gun. It could be a fake gun. As long as you say, I have a gun, so that's not the same. Do you see the distinction? Yes, I do. I do. I guess I'll go back to my beginning because I didn't begin. As we dialogue with counsel, armed robberies are different from this case because the crime is an armed robbery. Right, but proving that the person was armed is an element of the offense, correct? But if the person says, I have a gun, you don't subsequently have to prove it was a real gun. But they don't always say that they have a gun in those cases. If the person says they've got a gun pointed at you saying, I'll shoot you, you do what I tell you, I'm going to shoot, that's enough to find you guilty of an armed robbery. It is. With a gun. Yes. But that's not true in all those cases. In some of those cases, they found that the evidence was sufficient that the person pointed something that resembled a gun, and the courts found that the evidence that the person had a gun and the testimony of people who knew what a gun looked like, that it was a gun, was sufficient to establish that it was a gun as circumstantial evidence, and that's what we have here. Or trial courts say that I'm not convinced beyond a reasonable doubt it was a firearm, but it was a bludgeon, and the bludgeon would be sufficient for the armed robber. So you avoid the enhancement because it's not a firearm, but it's still an armed robbery because whatever it was in his hand, or her hand, was a bludgeon that could constitute the sufficient force to make an armed robbery. Anyway, why don't you continue with your... Yes. Thank you, Your Honor. I appreciate that. I was getting disjointed, I believe. Okay. Under the Jackson standard, Jackson v. Virginia, the controlling standard of review, the evidence marshaled against the defendant, together with the reasoning inferences generated by that evidence, supported the trial court's finding that the defendant possessed a firearm, and thus his conviction for armed habitual criminal based on that finding. Reviewing courts value the challenge of sufficiency of the evidence under Jackson's standard, which means that all the evidence must be considered in the light most favorable to the prosecution. That includes, even if the trial court didn't expressly consider that evidence, as Your Honor pointed out in questioning counsel. Because I don't think, because the trial court did not discuss kind of the second part of the case against the defendant as much, and I'd like to say that that contributes to and bolsters the case against the defendant here, which is the recovery of the gun, furthers Sergeant Fraction's testimony, which we believe is sufficient to establish the defendant's guilt in this case. But there is more in this case, and the more is the testimony about what happened after Sergeant Fraction saw the defendant get into the car with the gun, which is all the testimony about the recovery of the gun, and the fact that she then looked at the gun, which was in fact a gun, based on what I believe it was Officer Rodriguez's test, Jesse Rodriguez I believe is the name, about how he cleared the gun, and she looked at the gun and said, yes, that's the same as, that looks the same as the gun that I saw, and in fact it was a gun, or a firearm I guess if we're going to use the technical, a silver handgun was the one she saw. She had a good view when she saw it. She had plenty of experience with firearms, more than the witnesses in all those other cases where the courts have consistently found that eyewitness testimony that an offender possessed a firearm, combined with circumstances under which the witness was able to view the weapon,  that's a quote from this court's opinion, the first district's opinion in a case called Jackson, which was the one that the trial court was specifically relying on, I believe. Where he got a firearm. Where he got a firearm, yes, which he had gotten a firearm soon thereafter, and it was for that reason that I think he thought that that was pretty much enough to base his ruling, without really going into, not saying that he didn't believe that it was the same gun, but just sort of like, that's enough. And in that case, by the way, this court was citing Davis, and it also referenced, and I would also reference the LA Supreme Court's ruling in Wright, where the victim's family briefly saw the handle of a gun, and that there was evidence that during the robbery that the defendant actually possessed a BB gun. That was actually based on accountability, I believe, and it was the co-defendant. So even when we don't present the firearm, and in this case we didn't present the firearm, but we recovered it. I realize in all those cases you just said they're clearly distinguishable, right? They are robberies. They are, but the point that it was found to be a gun, that that was sufficient, means something, I think. I mean, yes, they're distinguishable to that extent. Is there any limit on what you're suggesting? You're saying any time a witness says, I saw what I thought was a gun, that's enough? Is there any limit on that? Well, the witness, the trial of fact, has to believe. Yeah, what I'm saying, I mean, from the appellate standpoint, obviously a trial of fact. As we know from yesterday, we look at what some people thought was a gun. Yeah, I mean, I believe from the appellate standpoint they put a lot of qualifiers in front of the eyewitness testimony. They said unequivocal eyewitness testimony. They talked about the witness knowing. They talked about essentially what the defendant's counsel talked about in his opening brief, the bigger slings factors. They didn't actually use those factors, but they talked about all the factors that we always use when we talked about whether someone's observation was good and whether they could make a good objective observation of something, sort of like whether you think that I can accurately observe the seal that's behind your Honor's head, whether that's a good observation. And that's not subjective testimony, at least not in the legal sense. Those are my observations. Well, did I have a good view? How good is my observation? As it comes to observation, do I have any idea what the seal on there looks like? Can I read? All those things come into play. Let me ask you, is it the State's contention that absent a weapon, an object, can someone be convicted of possessing a firearm simply on the testimony of a witness saying, I saw the defendant with a firearm? Yes. Even though the statute defines what a firearm is and excludes other things that look like a firearm but aren't firearms. I mean, how would the trier of fact have proof beyond a reasonable doubt that the object that looks like a firearm, we don't have it, we don't know what it is, it's an object that looks like a firearm. How would a trier of fact have sufficient proof beyond a reasonable doubt that the device was designed to expel a projectile and it was not a BB gun, for example? I think the Illinois Supreme Court kind of dealt with that when they had to distinguish the BB gun case, the case where they, in fact, did recover the BB gun after the fact. I'm saying in the situation where there was no recovery, what counsel is bringing up is the, clearly, we don't see any prosecutions for possession of cocaine without the substance being examined for cocaine. Yes, Your Honor. Yes. He's saying anybody could be subject to prosecution for possession of a firearm without introduction of the object thought to be a firearm, and that would be sufficient if the witness says, oh, I know firearms, that was a firearm, without any objective way of determining whether what was seen was a device capable of expelling a projectile. So is it the State's position that that would be proved beyond a reasonable doubt if somebody said, I saw the defendant with the weapon? If that person's testimony is sufficiently credible under the, you know, all the things that come into play for credible, yes. But I would also hasten to point out that this isn't that case. Well, I know it's not. So we've got more than that. I agree with you completely on your last part, but I'm just asking the hypothetical. Yes. Is it the State's position that that would be proof beyond a reasonable doubt? Simply somebody saying he had a weapon in his hand, a firearm in his hand? If the, oh. This is Justice Pierce's question. I believe that if that person's testimony is found to be, I mean, and they go through the crucible of testifying on cross-examination, describing it, answering questions, you know, they don't just say, hey, I saw a gun. And, you know, if somebody asks them, well, how could you see it? Where were you sitting? Do you know what a gun looks like? You know, what did you see when you, you know, all that stuff, that that is sufficient. Drugs and guns aren't the same thing. Red powder can be a lot of things. Leaves can be a lot of things. A gun is a lot. The question of the witness was, do you know whether it was a BB gun? And if the witness says, I don't know, maybe, and things like that, then you've got a problem. But that's not what happened here. And I think that it says, I believe in the cases, on a whole line of cases I was talking about, which, you know, may differ in that they dealt with a different offense, but they talked about the aspect of it, which was the possession of a gun or having a gun. They all talked about unequivocal, which this officer's testimony here was unequivocal. They all talked about certitude with her testimony that what she saw was a gun was certain. Yes, she couldn't tell you exactly what make and model it was from where she was sitting. But then again, when she was shown one afterwards, she said, yeah, that's it. That's the kind of gun I saw. That can be sufficient if trial of fact finds it to be after going through the crucible of testifying. But that person, and in this case you're talking about a well-trained eye, I would say. You've got a police officer who's doing, literally observing at the time she sees it. That's what her job is at that moment. She is surveilling. She doesn't just randomly see it in passing. She's sitting there and watching. If that's what that person sees, that's what it is. It's a gun. And guns aren't the same as, I guess it's guns aren't the same as drugs. Drugs don't have to look a certain way, and we don't have the same standard of proof for that. And if somebody wants to create that standard, that would be kind of up to the legislature or somebody else in Springfield, the Supreme Court, because that requirement has not existed. Not the appellate court? Pardon? Not the appellate court? We do have the same standard of proof. I feel like the LRA Supreme Court's decisions, as I read them, don't have – I don't read them as creating an opening for this. But you just said that you believe this was a – well, maybe you didn't say that, maybe the other side said that. It was the other side that said that. I believe that those armed robbery cases are much more on point and much more controlling than Your Honor does, apparently. Obviously. So that's what I was – so, yes, I believe that those cases are controlling. Just to answer your question, which I want to come back to, he asked you whether or not the appellate court could make that decision. And I think your answer is no, I mean, the Supreme Court can't. The appellate court is required to follow Supreme Court precedent. Yes, we agree with you. We always will. But where the Supreme Court has not expressly addressed a particular issue, your position is the appellate court still can't address that issue. My position, I guess, is that they have addressed the issue in those cases. And we obviously disagree about the ambit or the reach of those prior decisions that you and I were talking about before, which talk about what the court can see in a gun. Now, maybe I'm talking about the prior. Justice Pierce was asking you questions, and I have questions. But I'll let you finish, Justice Pierce. Were you done? Yes, Your Honor. I'm sorry. Okay. My question is this. I'm coming back to kind of piggybacking off the questions that Justice Pierce was just asking. The question is whether or not someone saying, I saw her with a gun, is enough for that person to be found guilty beyond a reasonable doubt with ever having the gun tested or without ever producing the gun. And your position is, yes, that's enough to find them guilty beyond a reasonable doubt. Is that the State's position? I'm asking the same question. I know. I think it is under most cases. I think that's what most cases have. And then the State goes on to say that, no, in this case, we have more. Yes. So I'm trying to see which position you're taking. Are you saying that there's more, which is what Justice – what they asked you about earlier, or are you saying that what Justice Pierce is asking you, that Justice Pierce, you're wrong, that's enough? I'm saying both. I'm saying that we went on – that even if you don't agree with me on point one, which is that we went just on her testimony, and even without the other stuff, we would still win because we have more. Okay. So the more is this. That's what I'm here to say. You believe that it's reasonable for the trial court to infer that the defendant placed the gun under the van. Because that's what you said in your book. The defendant or someone else could have placed it under the van as long as he had the gun in the car. Just stay with what you argued in your brief. If you want to change your argument, that's fine. But in your brief, you state that it was reasonable for the trial court to infer that the defendant placed the gun under the van. I think that's fair. Yes. So you believe that was a reasonable finding on the part of the trial court. Well, the trial court didn't make that finding, but I would say that would be a reasonable inference. Well, that was your argument. That would be a reasonable inference. That would be. That would be the argument that you're not right. That's a reasonable inference to draw under the facts because of where. We can't really talk at the same time. I apologize. Because they could pick that up. But I'll be quiet and I'll listen. I'm sorry. No, no. I apologize. No, I apologize. I'm not sure if you were talking first or if I was talking first. I thought I was, but I apologize if I were not. Your Honor, I think what I wrote was, as you correctly read it, that it was reasonable for the trial court to infer that the defendant himself, the defendant himself, not one of the other two people in the car, was the person who actually put the gun under the car. Although, honestly, as long as somebody else, one of the other two guys, put it under the car, that would be sufficient, too, because all we have to prove is that the defendant was the one who possessed the gun. And if he got in the car, handed it to somebody else, and they put it under, as long as he was the one who got in the car with the gun. It's not clear about the facts. There were at least six officers present at the time, correct? There were several officers present. At least six. At least six. Maybe more, but at least six, correct? Yes. Okay. And nobody saw anybody put a gun in the van or kick a gun in the van or possess a gun during that time? Nobody testified that they saw that. Only one officer testified. We have this testimony. We don't have to see nobody testify. Nobody saw that, because we can only go by what's in the trial record. We can't really know. No, no, no. I'm not creating any additional testimony, but I don't. The record's kind of silent as to the whole description about it. I think it's fair to say that no one saw exactly how that gun got there. Okay. But I think that one can draw a reasonable inference. And besides, under the Jackson standard of review, you know, we don't – the causal links don't have to be proven beyond a reasonable doubt. It's – you know, they can be inferred. I think the Canberra case is the one. They can't be inferred. That's why I asked if it were reasonable to infer, as you argued in the brief. Yes, I think it's – I think given the totality of everything. There were six officers present. He was in the van when everybody – when the officer was asking him to get out, right? Everybody was in the van. There were at least six officers present, maybe more. And the officers asked the gentleman to step out of the van. They searched everyone. Just tell me if I'm saying something wrong. They searched everyone, correct? They found no guns. And then probably there's some difference in the testimony there. I've heard between 15 minutes to 45 minutes later they find a gun under the van. Yeah, they were concerned about the guns. We did know that there was a gun involved because otherwise I don't think anybody – you know, they – Why would they not know a gun was involved if the sergeant wasn't involved? Counsel said that they didn't know that there was a gun involved, that he drew that inference. And I was saying that that's not true because that's why the testifying officer, Rodriguez, testified that he looked under the van because they were still concerned about the gun. And after having frisked or searched the persons of the three guys who got out of the van, including the defender who was the only guy out of the back, he looked under the van and saw closest to the rear passenger side, I guess. I mean, to the extent you can approximate. How much testimony was there that it was in the middle? It was in the middle but towards the back, I mean, to the extent you can approximate that. That's where he located a gun and then he, after calling in, removed the gun south because I guess there was no evidence tech available. And actually, he was on the other side of the van. They stepped out on the passenger side. The officer that found the gun was on the driver's side of the van and looked underneath the driver's side of the van and reached in and recovered the gun from underneath the driver's side of the van. That was – He said it was in the middle of the van but he recovered it from the driver's side of the van. Oh, that's where he reached from. I apologize. You should know the testimony better than I do. Sure. I want to make it brief. I wasn't present. I probably wasn't present either. I wasn't present either. So I – Well, I've read the records. I just – yeah, I mean, I haven't read any of that. I thought that – I think that there's definitely a reasonable link between that gun that was recovered and the defendant. And that link is that that way there's more, in addition to the testimony about citing defendant, the unequivocal testimony by the trained officer who works with guns, that she saw a defendant who she was focused on because her job at that moment was to do surveillance and to watch. She saw a defendant getting into that van, the rear passenger side, I believe, of the van with the gun, and she acted on that immediately. Unless there are more questions, I'm going to ask you any final questions. I would just say that for the reasons that I tried to lay out today and that I probably more succinctly laid out in my brief, I would respectfully request, or people that don't know, I would respectfully request that this court affirm the trial court's ruling and defendant's conviction. Thank you, Your Honors. I appreciate it. Bye-bye. I will be brief. I want to address something that Your Honor, Justice Mitva asked before about the gun under the car and what the trial judge said. When he was denying the motion for, as they called it, a directed finding at the close of the state's evidence, he said that he was speculating as to various ways that the gun could have ended up under the car. There could have been a hatch in the middle of the van floor or in the back of the van and so forth, although no one saw that or someone could have kicked it. But he said, and I'm quoting, the bottom line is it's based on what the officer saw at the time. She saw the defendant pass by her, and she say she saw the defendant with a gun. So that's where I get that he wasn't making a finding based on the gun. I would also add that when we're talking about factors and considering things like eyewitness identification, that's a reason why the standard should be, as we say, because we know over the years, certainly some figures in most cases would decide, that eyewitness identification testimony is not as reliable as we'd like to think it is, and people are oftentimes mistaken about eyewitness identification. And when it comes to the testing of the gun, it's not just the testing of the gun. And I apologize, I thought of this as I was listening to the argument. I don't have the case name for it. But I know a few years ago, I believe it was the first district said, that when you have a gun case, you have to also establish conclusively that someone was not on their own land, in their own abode. You can't just take that for granted. So you've got a statute that says a firearm has to be capable of doing these things, but there are these other categories of firearms that are capable of firing pneumatically and so on and so forth. And so it can't be one of these also. So there's a positive that it has to be, and sort of a negative that it shouldn't be also. So the state should, and I don't think this is imposing any great burden on them to do this, but the state should have to prove that the item that they have charged the defendant with, in fact, fits the lawful definition, and they shouldn't be able to do it by circumstantial evidence. They should have to do it by conclusive proof, as they do in other kinds of cases. And with that, if there's any questions, I'm happy to answer them. Thank you. Thank you. Thank you both very much. An interesting case. You did an excellent job both briefing it and arguing it, and you will get a decision from us shortly. I think we are in recess.